**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | |
|---|---|
| COSME ROMEO SOTO VALDEZ<br>13204 Keating Street<br>Rockville, Maryland 20853<br><br>VESENIA VISNEY AVILA<br>13204 Keating Street<br>Rockville, Maryland 20853<br><br>    *Plaintiffs*,<br><br>     v.<br><br>VE-H2 GENERAL SERVICES, LLC<br>3804 Ralph Road<br>Silver Spring, Maryland 20906<br><br>SERVE: VANILLE F. DE ARAUJO ABREU<br>         3804 Ralph Road<br>          Silver Spring, Maryland 20906<br><br>VANILLE F. DE ARAUJO ABREU<br> 3804 Ralph Road<br> Silver Spring, Maryland 20906<br><br>    *Defendants*. | Civil Action No.: 21-2893 |

**COMPLAINT**

Plaintiffs, Cosme Romeo Soto Valdez ("Plaintiff Valdez") and Vesenia Visney Avila ("Plaintiff Avila") bring this action against Defendants, VE-H2 General Services, LLC ("VE-H2") and Vanille F. De Araujo Abreu ("Abreu"), its President and owner, (collectively the "Defendants"), for violations of Plaintiffs' rights under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Labor & Empl. Art. §§ 3-415 and 3-427; the Maryland Wage Payment and Collection Law ("MWPCL"),

Labor & Empl. Art., §§ 3-505 and 3-507.2; and the District of Columbia Minimum Wage Revision Act ("DCMWRA"), § 32-1001, *et. seq.*

In support, Plaintiffs allege as follows:

## THE PARTIES

1. Plaintiff Valdez is an adult resident of Montgomery County, Maryland and was employed by Defendants from approximately June, 2015 to September 30, 2021 when he resigned because he was no longer being paid for his work hours. At all times relevant to the Complaint, Plaintiff Valez performed carpentry work for and on behalf of Defendants in the District of Columbia, Maryland and Virginia. He spent about half of his work time in Maryland. During the time he was employed by Defendants, his hourly wage ranged from between $16 per hour to $36 per hour.

2. Plaintiff Avila is an adult resident of Montgomery, County, Maryland and was employed by Defendants from approximately March 2018 to September 30, 2021, when she also resigned due to lack of payment. At all times relevant to the Complaint, Plaintiff Avila worked for Defendants as a Carpenter's Helper. She worked directly with Plaintiff Valdez, who was her husband. During the time she was employed by Defendants, her hourly wage ranged from $12 per hour to $16 per hour.

3. VE-H2 is a limited liability company organized under the laws of the State of Maryland. VE-H2 was Plaintiffs' "employer" as that term is defined within the FLSA, the MWHL, the MWPCL and the DCMWRA, because, through its agents, owners, officers and/or members, it employed the Plaintiffs directly, hired them, set their rate of pay, set the terms and conditions of their employment, set their schedule, directed them in the performance of their work, assigned them work, maintained employment records for Plaintiffs and paid their wages.

3. Abreu is an owner, officer, and/or member of VE-H2. Abreu is an employer of Plaintiffs within the meaning of the FLSA, the MWHL, the MWPCL and he DCMWRA because he is an owner, officer, and/or member of VE-H2, who is significantly involved in VE-H2's business operations. Specifically, (1) he is responsible for creating and enforcing, through lower-level managers, VE-H2's policies and procedures governing employee pay and benefits, (2) he controls the corporate funds which were used to pay Plaintiffs and other employees and could and did allocate funds as profits for his own benefit, (3) he set and approved the hourly rate for Plaintiffs and other employees who are non-exempt and acted with knowledge of or approved the unlawful pay practices of paying straight time wages for overtime hours, (4) he had authority to hire, fire and discipline Plaintiffs, (5) he supervised them, established Plaintiffs' work schedule and directed them to the various job sites where they worked; (6) he made or approved the decision to engage in the illegal pay practices that are the subject of this law suit in order to make VE-H2 more profitable, and (7) he maintained Plaintiffs' employment records in the basement of his home where the VE-H2 corporate offices were located.

4. VE-H2 constitutes an "Enterprise Engaged in Commerce" within the meaning of 29 U.S.C. § 203 (s)(1), as VE-H2 had: (1) employees engaged in commerce or the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce; and (2) a gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

## JURISDICTION

5. The jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 217. The Court has subject matter jurisdiction under § 1331 because Plaintiff's claims involve federal questions and the Court has pendant jurisdiction over the Plaintiffs' state law claim under 28 U.S.C. § 1367.

6. This Court has *in personam* jurisdiction over Defendants because they conduct business in the State of Maryland, their corporate headquarters is located in Maryland, they perform residential remodeling services in Maryland and many of the events giving rise to these claims occurred in Maryland.

## STATEMENT OF FACTS

7. While employed by Defendants, Plaintiffs' duties included, but were not limited to carpentry related work. They remodeled existing homes, schools and apartment complexes.

8. Defendants misclassified Plaintiffs as independent contractors and paid them straight time rates for all of their hours of work, even their overtime hours. In addition, Defendants did not make withholdings on any of the paychecks delivered to the Plaintiffs.

9. Defendants had a time-keeping system whereby the Plaintiffs would keep track of their hours and then report the hours on time sheets provided by Defendants. However, for the last six-months of their employment, Defendants kept track of Plaintiffs' hours by requiring them to submit text messages documenting their work hours to a business phone maintained by Defendants.

10. During his employment with Defendants, Plaintiff Valdez normally worked five to seven days per week and anywhere from 40 to 75 hours and sometimes more. Defendants paid Plaintiff Valdez on a bi-weekly basis. However, during this period of time, Plaintiff Valdez did not

receive any payment at all for some of his work hours and he was not paid an overtime premium for his overtime hours.

11. During her employment with Defendants, Plaintiff Avila normally worked five to seven days per week and anywhere from 40 to 75 hours and sometimes more. Generally, she worked the same number of hours as Plaintiff Valdez, as they worked together and travelled to and from the job sites together. Defendants also paid Plaintiff Avila on a bi-weekly basis. However, during this period of time, Plaintiff Avila did not receive any payment at all for some of her work hours and she was not paid an overtime premium for any of her overtime hours.

12. Up until mid-August, 2021, for work purposes, Plaintiffs utilized a commercial van owned by the Defendants. Defendants also provided many of the tools utilized by Plaintiffs. However, in mid-August, 2021, Plaintiff Valdez agreed to purchase a used commercial van from Defendants for the sum of $15,000, including the tools located inside the van. The parties completed the purchase and Defendants conveyed the title to Plaintiff Valdez sometime in August, 2021 or later. Plaintiff Valdez paid Defendants the sum of $10,000 in cash and Defendants recovered the remaining $5,000 by withholding subsequent payments from both the Plaintiffs for their labor and expenses. However, Defendants withheld far more than the $5,000 owed for the van and they failed to pay Plaintiffs anything at all for any of their work from mid-August, 2021 through September 30, 2021.

13. From mid-August, 2021 to September 30, 2021, Plaintiff Valdez's promised rate of pay was $36 per hour. From Mid-August, 2021 to September 30, 2021, Plaintiff Avila's promised rate of pay was $16 per hour.

14. While employed by Defendants, Plaintiffs also performed work on projects located in the District of Columbia. During the time Plaintiffs performed work within the District of

Columbia, they were employed within the District of Columbia within the meaning of D.C. Code § 32-1003 (b), because, during these time frames, they regularly spent more than 50% of their work time in the District of Columbia. Plaintiffs do not have the precise list of District of Columbia Projects at this time because Defendants possess this information.

15. The applicable statute of limitations under the DCMWRA (which went into effect on February 26, 2015), provides that an action, "must be commenced within 3 years after the cause of action accrued, or the last occurrence if the violation is continuous. . . ." D.C. Code § 32-1308 (c)(1). During the time frames Plaintiffs worked in the District of Columbia, Defendants, failed to pay the Plaintiffs an overtime premium for their overtime hours in violation of the DCMWRA. Given that the last violation occurred on or about September 30, 2021, the limitations period for the wage claims will elapse on or about September 30, 2024. Therefore, Plaintiffs have asserted timely claims for violations of the DCMWRA for the time frames when they performed work in the District of Columbia.

16. Plaintiff has also asserted timely wage claims under the DCMWRA and the DCWPCA for the time frames when they performed work in the District of Columbia for another reason: the statute of limitations for their claims under the DCMWRA was tolled when their employment began (June, 2015 and March, 2018 respectively) and for each day thereafter, when, on a continuing basis, Defendants, failed to comply with the notice provisions of D.C. Code § 32-1008 (c) and (d) (which became effective on February 26, 2015). Section 32-1008 (c) and (d) required Defendants, to provide written notice to Plaintiffs of, *inter alia*, their overtime rate of pay and any exemption that applied to them. Defendants were required to comply with this written notice provision no later than the beginning of each Plaintiff's employment and within 30 days of any change in their overtime rate or exemption. *See* D.C. Code § 32-1008 (d)(1)(A). At no time

during Plaintiffs' employment with Defendants did they comply with the notice provisions by providing Plaintiffs with written notice of any type, indicating the rate of their overtime pay or any exemption that applied to them. Since Defendants failed to provide the required written notice to Plaintiffs, the statute of limitations in § 32-1308 (c) was tolled from the time their employment with Defendants began. This means that Plaintiffs have timely unpaid wage claims for the time frame during which they performed work within the District of Columbia. *See* D.C. Code § 32-1008 (d)(3) ("The period prescribed in § 32-1308 (c), shall not begin until the employee is provided all itemized statements and written notice required by this section").

17. Thus, during the times Plaintiffs performed work within the District of Columbia, they are entitled to their unpaid wages plus an equivalent amount equal to three times their unpaid overtime wages as liquidated damages pursuant to D.C. Code §§ 32-1012 (b)(1), along with attorney's fees at the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

## COUNT I
## VIOLATIONS OF THE FLSA
## 29 U.S.C. §§ 201 – 216 (b)

18. Plaintiffs repeat and incorporate by reference all allegations of fact set forth above.

19. At all times relevant to this Complaint, Defendants were Plaintiffs' "employers" within the meaning of the FLSA.

20. At all times relevant to this Complaint, Plaintiffs were "employees" of the Defendants within the meaning of the FLSA.

21. Defendants violated the FLSA by knowingly failing to pay Plaintiffs one and one-half times their regular hourly rate for each hour over 40 that they worked and failed to pay Plaintiffs anything at all for some of their work hours.

22. Defendants' actions were not undertaken in good faith and they were willful such that the statute of limitations is three years.

23. Plaintiffs are not able to calculate their damages because they are not in possession of all of their time or payroll records.

24. Defendants are liable to Plaintiffs under 29 U.S.C. § 216 (b), for unpaid, and illegally withheld straight time and overtime time wages, an additional equal amount as liquidated damages, court costs, attorneys' fees, and any other relief deemed appropriate by the Court.

25. For this Count, Plaintiffs are seeking wages and damages back to November 11, 2018.

## COUNT II
## VIOLATIONS OF THE MWHL

26. Plaintiffs repeat and incorporate by reference all allegations of fact set forth above.

27. At all times relevant to this Complaint, Defendants were "employers" of the Plaintiffs within the meaning of the MWHL.

28. At all times relevant to this Complaint, Plaintiffs were "employees" of the Defendants within the meaning of the MWHL.

29. Defendants violated the MWHL by failing to pay Plaintiffs at one and one-half times their regular hourly rate for each hour over 40 that they worked and failing to pay Plaintiffs anything at all for some of their hours of work.

30. Defendants did not act in good faith, entitling Plaintiffs to liquidated damages.

31. Plaintiffs are not able to calculate their damages because they are not in possession of their time or payroll records.

32. As a result, Defendants are liable to Plaintiffs pursuant to the MWHL for their unpaid and illegally withheld straight time and overtime wages for the statutory period, an additional equal amount as liquidated damages, court costs, attorneys' fees, and any other relief deemed appropriate by the Court.

33. For this Count, Plaintiffs are seeking wages and damages back to October 28, 2018.

## COUNT III
## VIOLATIONS OF THE MWPCL

34. Plaintiffs repeat and incorporate by reference all allegations set forth above.

35. Defendants knowingly, willfully and intentionally violated Plaintiffs' rights, under the MWPCL by failing to pay Plaintiffs all of their overtime wages under the MWHL, failing to pay them anything at all for some hours of work and failing to pay them anything at all for their work hours between mid-August, 2021 and September 30, 2021.

36. Defendants' unlawful failure or refusal to pay the required wages and making of the unlawful deductions was not the result of a *bona fide* dispute within the meaning of the MWPCL.

37. Plaintiffs are not able to calculate their damages because they are not in possession of their time records or the vast majority of their payroll records.

38. Defendants are liable to Plaintiffs pursuant to the MWPCL for the aforementioned wages, an additional amount equal to double the unpaid overtime and straight-time wages as liquidated damages, litigation costs, attorneys' fees, and any other relief deemed appropriate by the Court.

39. For this Count, Plaintiffs are seeking wages and damages back to October 28, 2018.

# COUNT IV
# VIOLATIONS OF THE DCMWRA

40. Plaintiffs re-allege and incorporate herein the allegations contained in the paragraphs above.

41. At all times when they were performing work in the District of Columbia, Plaintiffs were "employees" of Defendants within the meaning of D.C. Code § 32-1002 (2).

42. At all times when they were performing work in the District of Columbia, Defendants were "employers" of Plaintiffs within the meaning of D.C. Code § 32-1002 (3).

43. At all times when they were performing work in the District of Columbia, Defendants violated the DCMWRA by failing to pay Plaintiffs an overtime premium for the overtime hours they worked.

44. As a result of the violations of the DCMWRA by Defendants, they are liable for Plaintiffs' unpaid wages, liquidated damages equal to three times the unpaid overtime wages and reasonable attorneys' fees and costs incurred in this action, including attorneys' fees at the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

45. The precise amount owed to the Plaintiffs for their work time in the District of Columbia cannot be calculated because Plaintiffs and their counsel do not possess all of their time and payroll records, which are in possession of Defendants.

46. For this Count, Plaintiff Valdez is seeking wages and damages back to June, 2015 and Plaintiff Avila is seeking damages back to March, 2018.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant them the following relief:

a) enter a judgment against Defendants, jointly and severally, and in favor of the Plaintiffs in the amount of Plaintiffs' unpaid and illegally withheld overtime and minimum wages, plus an equivalent amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

b) enter a judgment against Defendants, jointly and severally, and in favor of Plaintiffs, based on Defendants' violations of the MWHL in the amount of Plaintiffs' unpaid and illegally withheld overtime and an equivalent sum as liquidated damages;

c) enter a judgment against Defendants, jointly and severally, and in favor of Plaintiffs, based on Defendants' violations of the MWPCL in the amount of Plaintiffs' unpaid and illegally withheld overtime and straight time wages and an amount equal to twice that sum as liquidated damages;

d) enter a judgment against Defendants, jointly and severally, and in favor of Plaintiffs, based on their violations of the DCMWRA in the amount of each Plaintiff's unpaid and illegally withheld overtime and straight-time wages, plus an amount equal to three times the amount of unpaid overtime wages as liquidated damages, for violations occurring during Plaintiffs' employment with Defendants;

e) enter judgment in favor of Plaintiffs for their costs and reasonable attorneys' fees incurred in this action, as provided in 29 U.S.C. § 216 (b), Md. Code Ann., Labor & Empl. §§ 3-427 (a) and the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015) and litigation costs and expenses, as required by D.C. Code § 32-1308 (b)(1).

Respectfully submitted,

/s/Omar Vincent Melehy
Omar Vincent Melehy, MD Bar No.: 05712
MELEHY & ASSOCIATES LLC
8403 Colesville Road, Suite 610
Silver Spring, MD 20910
Tel: (301) 587-6364
Fax: (301) 587-6308
Email: ovmelehy@melehylaw.com
*Attorneys for Plaintiffs*