IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| COSME ROMEO SOTO VALDEZ, *et al.* | * |
| | * |
| *Plaintiffs,* | * |
| | * |
| v. | *   Case No.: 8:21-cv-02893-GJH |
| | * |
| VE-H2 GENERAL SERVICES, LLC, *et al.* | * |
| | * |
| *Defendants* | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION TO DISMISS, FOR SUMMARY JUDGMENT, AND/OR FOR JUDGMENT ON THE PLEADINGS AS TO COUNT IV**

Defendants VE-H2 General Services, LLC ("VGS") and Vanille F. de Araujo Abreu ("Abreu", together "Defendants"), through undersigned counsel, hereby submit this Reply Memorandum in support of their Motion to Dismiss, for Summary Judgment, and/or for Judgment on the Pleadings (the "Motion to Dismiss"). Defendants are simultaneously filing an Opposition to Plaintiff's motion for leave to file a second amended complaint.

**ARGUMENT**

**I. Plaintiffs Misinterpret the Law by Ignoring Basic Rules of Statutory Construction**

In their Opposition, Plaintiffs argue that that the text of the D.C. Minimum Wage Revision Act ("DCMWRA"), D.C. Code § 32-1001, *et seq.*, does not say what it means, and they attempt to add language where it does not exist. This is contrary to the canons of statutory construction.

The Fourth Circuit has instructed that, when interpreting a state statute, a federal court should "apply the statutory construction rules applied by the state's highest court." *In re DNA Ex Post Facto Issues*, 561 F.3d 294, 300 (4th Cir. 2009). The rules of statutory construction are well-

1

established in D.C.  The "first step when interpreting a statute is to look at the language of the statute." *Jeffrey v. United States*, 878 A.2d 1189, 1193 (D.C. 2005).  "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) (citing *Varela v. Hi-Lo Powered Stirrups, Inc*., 424 A.2d 61, 64 (D.C. 1980) (en banc)). "It is axiomatic that 'the words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them.'" *Id*. (quoting *Davis v. United States*, 397 A.2d 951, 956 (D.C. 1979)). When interpreting the language of a statute, we must look to the plain meaning if the words are clear and unambiguous. *District of Columbia v. District of Columbia Office of Employee Appeals*, 883 A.2d 124, 127 (D.C. 2005) (citing *Jeffrey, supra*, 878 A.2d at 1193). Usually "[w]hen the plain meaning of the statutory language is unambiguous, the intent of the legislature is clear, and judicial inquiry need go no further." *District of Columbia v. Gallagher*, 734 A.2d 1087, 1091 (D.C. 1999) (citations omitted).

Here, the statutory language is unambiguous.  The statute, in plain words, states that its provisions apply only to a person who "regularly spends more than 50% of their working time in the District of Columbia".[1]  DCMWRA § 32-1003(b)(1).  This clearly means it applies only to people who spend most of their employment ("working time") in D.C.  It does *not* mean, as Plaintiffs argue in their Opposition, that a court must "first identify a unit of time, most logically a week" and then determine if those units of time "are occurring 'regularly'", in which case the DCMWRA "bestows coverage" on an employee in any unit of time where he spends more than

---

[1] "Working time" is defined as "*all* the time the employee (A) Is required to be on the employer's premises, on duty, or at a prescribed place; (B) Is permitted to work; (C) Is required to travel in connection with the business of the employer; or (D) Waits on the employer's premises for work." DCMWRA § 32-1002(10) (emphasis added).

50% of his work time in D.C. ECF 18 at 3-4. That language simply does not exist in the statute and therefore this interpretation must be rejected.

Plaintiffs' argument about the remedial nature of the DCMWRA is unavailing and the cases they cite do not support their position. *Morrison v. Int'l Programs Consortium, Inc.* only discussed the remedial nature of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216, *et seq.* to examine whether the plaintiff was "employed" as defined by that statute—an issue not relevant in the current case. 346 U.S. App. D.C. 301, 253 F.3d 5, 10,11 (2001). In *Escamilla v. Nuyen*, the court also addressed the similarities between the requirement to pay overtime under both the FLSA and DCMWA—which is, again, not at issue here. 227 F. Supp. 3d 37, 52 (D.D.C. 2016). *Perez v. C.R. Calderon Constr., Inc.* dealt only with the definitions of "employer" and "employee". 221 F. Supp. 3d 115, 138 (D.D.C. 2016).[2] Finally, the premise that the FLSA itself pursues a "remedial purpose" has been flatly rejected by the U.S. Supreme Court. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (dismissing the notion that the FLSA must be interpreted narrowly because that "relies on the flawed premise that the FLSA pursues its remedial purpose at all costs.") (citing favorably *Henson v. Santander Consumer USA Inc*, 137 S. Ct. 1718 ("Legislation is, after all, the art of compromise, the limitations expressed in statutory terms often the price of passage.")).

Courts have already had occasion to interpret the DCMWRA and have found that it is relatively narrow-tailored. Courts understand that the D.C. Council did not intend for the DCMWRA to be as broad as its companion, the D.C. Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1001, *et seq*. This distinction was examined in depth in *Lincoln-Odumu v. Med. Faculty Assocs.*, Civil Action No. 15-1306 (BAH), 2016 U.S. Dist. LEXIS 88659

---

[2] The rest of the cases Plaintiffs cite for this "remedial nature" argument are not wage cases.

(D.D.C. July 8, 2016).  There, the court explained that the DCMWRA is far more restrictive than the DCMWPCL.  *Id*. at *24.  Importantly, the court noted that "consistent with these more limited substantive provisions, the [DC]MWRA has, since its enactment, been confined explicitly to individuals working *principally within the District*. See Minimum Wage Act Revision Act of 1992, § 4(b), 40 D.C. Reg. 761, 762-63 (Jan. 29, 1993)." *Id.*, at *24 (emphasis added).  The fact is that the legislature intended for the DCMWRA to apply only to workers who spend most of their time in D.C., and the legislature clearly expressed this intent in the statute's unambiguous language.

Here, Plaintiffs have admitted that "overall, we did not spend more than half of our total work time in the District of Columbia."  Affidavit of Cosme Romeo Soto Valdez, ECF 18-1 at ¶9.  That is the end of the analysis.  Plaintiffs admit that they did not "regularly spend more than 50% of their work time" in D.C. during their employment.  They fall squarely outside the statutory definition of those individuals the D.C. Council sought to cover under the DMWRA.  To find otherwise is to read language into the statute that simply does not exist.

Finally, dismissal of the DCMWRA claim would not be inequitable.  It is only one of four counts Plaintiffs brought against Defendants for alleged wage violations, including federal and Maryland wage and hour claims.  Defendants are not now moving to dismiss those other claims—the remedies under those statutes are available to Plaintiffs to pursue.  If anything, the inequity would be to hold Defendants, who are Maryland employers only tangentially involved in D.C., to account under the DCMWRA.  Plaintiffs' strategy is obvious.  They know that the DCMWRA provides remedies far broader than those under the FLSA or Maryland wage and hour laws, including *quadruple* damages, an allegedly never-ending statute of limitations, and inflated attorney's fees calculated at the rates adopted in *Salazar ex rel. v. District of Columbia*, 809 F.3d

58 (D.C. Cir. 2015).³  It is unfair for Defendants to risk these draconian penalties when they are by all objective measurements Maryland employers, and Plaintiffs did not perform more than 50% of their work in D.C.  If Plaintiffs are so concerned about statute of limitations issue, they should not have waited so long to bring their claims.  Defendants should not be penalized for that failure.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this honorable Court dismiss Count IV of Plaintiff's First Amended Complaint, with prejudice.  In the alternative, Defendants respectfully request that this Court grant summary judgment in its favor on Count IV.

Respectfully submitted,

*/s/ Roy Lyford-Pike*
Roy Lyford-Pike, Bar No. 19836
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Phone: 301-587-9373
Fax:    240-839-9142
Email: rlpike@zagfirm.com

*Counsel for Defendants*

---

³ For example, presumptively reasonable hourly rates for undersigned counsel, who has been admitted to the bar for six years, is $165-300 under Appendix B to this Court's local rules.  Under the matrix approved in *Salazar*, that rate balloons to $468.  *See* Laffey Matrix, as approved by *Salazar*, available at http://www.laffeymatrix.com/see.html.

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 4th day of March, 2022, a copy of the foregoing was served by this Court's CM/ECF system and delivered to:

Omar Vincent Melehy, Esq.
Melehy & Associates LLC
8403 Colesville Road, Suite 610
Silver Spring, MD 20910
ovmelehy@melehylaw.com

*Counsel for Defendants*

                                            */s/ Roy Lyford-Pike*
                                            Roy Lyford-Pike