IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **COSME ROMEO SOTO VALDEZ,** *et al.*, | * |
| Plaintiff, | * |
| v. | *     Case No.: GJH-21-2893 |
| | * |
| **VE-H2 GENERAL SERVICES LLC,** *et al.*, | * |
| Defendant. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiffs Cosme Romeo Soto Valdez and his wife, Vesenia Visney Avila, brought this civil action against Defendants VE-H2 General Services, LLC ("VGS") and Vanille F. De Araujo Abreu ("Abreu"), its President and owner (collectively "Defendants"), alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Labor & Empl. Art. §§ 3–415 and 3–427; the Maryland Wage Payment and Collection Law ("MWPCL"), Labor & Empl. Art., §§ 3-505 and 3-507.2; and the District of Columbia Minimum Wage Revision Act ("DCMWRA"), § 32-1001, *et. seq.* Pending before the Court are a number of motions including Defendants' Motion to Dismiss, for Summary Judgment, and/or for Judgment on the Pleadings as to Count IV, ECF No. 16, and Plaintiffs' Motion for Leave to File Second Amended Complaint, ECF No. 19.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Plaintiffs' Motion for

---

[1] Also pending before the Court is Defendant's previous Partial Motion to Dismiss, ECF No. 12, which is denied as moot in light of Plaintiff's Amended Complaint, which was filed as of right, per Federal Rule of Civil Procedure 15(a).

1

Leave to File Second Amended Complaint, is denied, and Defendants' Motion to Dismiss, for Summary Judgment, and/or for Judgment on the Pleadings as to Count IV, is granted.

## I. BACKGROUND[2]

### A. Factual Background

### 1. The Parties

Plaintiff Valdez, an adult resident of Montgomery County, Maryland, was employed by Defendants from approximately June 2015 to September 30, 2021, when he resigned because he stopped receiving payment for his work. ECF No. 19-1 ¶ 1. Plaintiff performed carpentry work for and on behalf of Defendants in the District of Columbia, Maryland, and Virginia, and he alleges that he spent "about half of his work time in Maryland." *Id.* During the course of his employment with Defendants, Plaintiff's hourly wage ranged from $16 to $36 per hour. *Id.* Plaintiff Avila, also an adult resident of Montgomery County, Maryland, is the wife of Plaintiff Valdez and worked with her husband as a Carpenter's Helper from March 2018 to September 30, 2021. *Id.* ¶ 2. During the course of her employment with Defendants, her hourly wage ranged from $12 to $16 per hour. *Id.*

Defendant VES is a limited liability company organized under the laws of the State of Maryland. *Id.* ¶ 3. Defendant Abreu is an owner, officer, and/or member of VES and is involved in VES' business operations. *Id.* Plaintiff contends that VES' website identifies Defendant Abreu as its President and that the Maryland Department of Assessments and Taxation website lists him as VES' resident agent. *Id.* ¶ 8. Defendant Abreu also signed VES' Articles of Organization as an "authorized person." *Id.* Plaintiffs contend that Defendant Abreu is responsible for (1)

---

[2] Unless otherwise stated, the background facts are taken from Plaintiffs' Proposed Second Complaint, ECF No. 19-1, and are presumed to be true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

creating and enforcing VES' policies and procedures governing employee pay and benefits; (2) controlling the corporate funds used to pay Plaintiffs and other employees as well as allocating "funds as profits for his own benefit;" (3) setting and approving the hourly rate for Plaintiffs and other employees who are non-exempt; (4) hiring, firing, and disciplining Plaintiffs; (5) supervising Plaintiffs, establishing their work schedule, and directing them to their job sites; (6) making or approving the decision "to engage in the illegal pay practices" alleged in this suit; and (7) maintaining Plaintiffs' employment records in the basement of his home, where VES' corporate offices were located. *Id.* ¶ 4.

Plaintiffs contend that when Plaintiff Valdez began working for VES in approximately June 2015, Defendant Abreu hired him, determined his hourly rate and method of pay, including time-keeping procedures, and informed Plaintiff that he "did not and would not pay an overtime premium for his overtime hours." *Id.* ¶ 5. This "unlawful policy," Plaintiffs allege, continued throughout Plaintiffs' employment with Defendants. *Id.* Defendant Abreu also directly supervised Plaintiffs by "continuously monitoring" their work schedule, along with the quality of their work. *Id.* He would send Plaintiffs to various construction sites to work on projects and, in many instances, Plaintiffs would work on a specific job, on location, for days or weeks at a time. *Id.* ¶ 6. When Plaintiffs were sent on a new project, Defendant Abreu would instruct Plaintiffs on where to go and what to do, and he also visited each job site to inspect the quality of their work. *Id.* If he noticed any issues with their quality of work, he would instruct Plaintiffs to remedy the issues. *Id.* Additionally, Plaintiffs contend that Defendant Abreu entered into and signed construction contracts, including contracts with subcontractors. *Id.* ¶ 7.

2. **Factual Allegations**

While Plaintiffs were employed by Defendants, their duties included, but were not limited to, carpentry related work for remodeling existing homes, schools, and apartment complexes. *Id.* ¶ 12. Plaintiffs contend that Defendants misclassified them as independent contractors and paid them "straight time rates for all of their hours or work," including their overtime hours. *Id.* Defendants also did not make any withholdings on any paychecks delivered to Plaintiffs. *Id.* During their employment with Defendants, Plaintiffs kept track of their hours on time sheets provided by Defendants, however, for the last six month of their employment, Plaintiffs allege that Defendants tracked their hours by requiring them to submit text messages with their hours to a business phone maintained by Defendants. *Id.* ¶ 14.

Plaintiffs typically worked Monday through Saturday of each week, and once every month or two, they also worked on Sunday. *Id.* ¶¶ 15–16. They typically started work between 6:30 a.m. and 7:30 a.m., which is when they would either arrive to the job site or another location to load materials. *Id.* Plaintiffs workday usually ended between either 5:00 p.m. and 6:00 p.m. or 6:00 p.m. and 7:00 p.m. *Id.* Some projects, including one called "Amazon," required longer working hours from approximately 6:00 a.m. to as late as 8:00 p.m. or 8:30 p.m. *Id.* Plaintiffs took a lunch break of no more than thirty minutes each day and, pursuant to their agreement, Defendants paid Plaintiffs for their lunch breaks at their hourly rate. *Id.* ¶ 17. Plaintiff Avila generally worked the same number of hours as Plaintiff Valdez, as they worked together and traveled to and from job sites together. *Id.* ¶ 16. Defendants paid Plaintiffs on a bi-weekly basis, but, during their periods of employment, Plaintiffs did not receive any payment for some of their work and they were not paid overtime for their work. *Id.* ¶¶ 15–16.

Additionally, until mid-August 2021, Plaintiffs, for work purposes, used a commercial van owned by Defendants, as well as tools provided by Defendants. *Id.* ¶ 18. Then, in mid-August 2021, Plaintiff Valdez agreed to purchase a used commercial van from Defendants for $15,000, which included the tools inside the van. *Id.* Defendants conveyed the vehicle's title to Plaintiff Valdez sometime in August 2021 or later, and he paid $10,000 cash, while Defendants recovered the remaining $5,000 by withholding subsequent payments, for their labor and expenses, from Plaintiffs. *Id.* Plaintiffs contend that Defendants withheld more than the $5,000 they owed for the van and that Defendants failed to pay them "anything at all" for any of their work between the period of mid-August 2021 through September 30, 2021. *Id.*

When Plaintiff Valdez was first hired, he received $16.00 per hour, and then he received "incremental raises to $18.00 per hour, $21.00 per hour, $24.00 per hour and $29.00 per hour." *Id.* ¶ 19. From mid-August 2021 to September 30, 2021, his promised rate of pay was $36. When Plaintiff Avila was hired in 2018, she received $12.00 per hour, and thereafter she received "incremental raises to $14.00 per hour, and then to $15.00 per hour." *Id.* From mid-August 2021 to September 30, 2021, her promised rate of pay was $16 per hour. *Id.* Plaintiffs allege they will be able to estimate their damages "once they receive their pay/or time records," because they are in the exclusive possession of the Defendants. *Id.*

Plaintiffs also contend that they performed work on projects located in the District of Columbia during the course of their employment with Defendants. *Id.* ¶ 21. In their proposed Second Amended Complaint, Plaintiffs now seek to add that their jobs in the District of Columbia "occurred with the greatest frequency and regularity during the period June 2015 to April 2019," in which they regularly worked periods of between one and as many as twenty consecutive weeks "in which more than 50% of their time was spent working in the District of

5

Columbia." *Id*. They further contend that they "do not have the precise list of District of Columbia Projects at this time because Defendants posses this information and it is contained in Defendants' business records." *Id.* Further, Plaintiffs are without records for 2015, 2016, and most of 2021, "which would identify all of their District of Columbia jobs." *Id.* Plaintiffs only have partial records for 2017 through 2020, and they seek to add the following series of dates and working hours to their Amended Complaint:

    i.    During the period of 08/22/2017 to 10/6/2017, Plaintiff Valdez worked a total of 427.5 hours and more than 80% of this time during this period was spent on jobs located in the District of Columbia.

    ii.    During the period 12/16/2017 to 1/26/2018, Plaintiff Valdez worked a total of 284 hours, and more than 67% of this time was spent on jobs in the District of Columbia.

    iii.    During the period 6/9/18-6/15/18, Plaintiffs worked approximately 116 hours, and more than 84% of this time was spent on jobs located in the District of Columbia.

    iv.    During the period 9/23/18-10/19/18, Plaintiffs worked approximately 227 hours, and more than 58% was spent on jobs located in the District of Columbia.

    v.    During the period 11/5/2018 to 04/4/2019, Plaintiffs worked approximately 1314 hours, and more than 90% of this time was spent on jobs in the District of Columbia.

*Id.* ¶ 22. Plaintiffs claim that this list is not exhaustive and that there are "many other such periods occurring regularly during their respective periods of employment," which they will be able to identify once they obtain Defendants' business records. *Id.*

### B. Procedural Background

On November 10, 2021, Plaintiff filed a Complaint against Defendants, ECF No. 1. On January 7, 2022, Defendants filed their first Motion to Dismiss, ECF No. 12. On January 14, 2022, Plaintiffs filed an Amended Complaint, as of right, thereby mooting the Motion to Dismiss, ECF No. 14. On February 4, 2018, Defendants filed the now pending Renewed Motion

to Dismiss, for Summary Judgment, and/or For Judgment on the Pleadings as to Count IV, ECF No. 16. On February 18, 2022, Plaintiffs opposed the Renewed Motion to Dismiss, ECF No. 18, and filed the now pending Motion for Leave to File Second Amended Complaint, ECF No. 19. On March 4, 2022, Defendants replied in support of their Renewed Motion to Dismiss, ECF No. 20, and opposed Plaintiffs Motion for Leave to File Second Amended Complaint, ECF No. 21. On March 18, 2022, Defendants replied in support of their Motion for Leave to File Second Amended Complaint. ECF No. 22.

**II.   STANDARD OF REVIEW**

At this stage of the litigation, the parties may amend their pleadings "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts are to "freely give leave when justice so requires," *id.*, "unless the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008) (internal quotations and citations removed). An amendment to a complaint is futile when the amended complaint could not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Id.*

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("[A]

7

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint[,]" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**III.   DISCUSSION**

Defendants argue that Plaintiffs' Motion for Leave to File Second Amended Complaint should be denied for bad faith and futility, and that their Motion to Dismiss should be granted.

Defendants first argue that Plaintiffs' proposed amendments are brought in bad faith because they are attempting "to again amend their complaint in light of a dispositive motion." ECF No. 21 at 3. Defendants contend that because Plaintiffs' proposed amendments are "the second of its kind brought while a motion to dismiss was pending," this is indicative of bad faith and warrants the denial of Plaintiffs' Motion. *Id.* at 4. As this Court has previously explained,

however, Federal Rule of Civil Procedure 15(a)(1)(b) "expressly permits a party to respond to a motion to dismiss by filing an amended complaint." *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 321 (D. Md. 2015) (citing Fed. R. Civ. P. 15 advisory committee's note to 2009 Amendments ("A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim.")). And "the only reason [Plaintiff] requires leave of court here is because this is [their] second amendment and [they] waited more than twenty-one days after the motion to dismiss was filed." *Id.*

Further, Defendants' reliance on a "series of cases that simply stand for the well-established proposition that an amendment sought late in litigation . . . may be denied as prejudicial," are unpersuasive and distinguishable from the instant case. *See e.g.*, *Sandcrest Outpatient Servs., P.A. v. Cumberland County Hosp. Sys., Inc.,* 853 F.2d 1139, 1149 (4th Cir. 1998) (denying plaintiff's second motion to amend complaint after plaintiffs waited until eight months after filing the initial complaint to amend and where plaintiff attempted to add an additional remedy that it "should have been aware of from the outset."); *Goewey v. United States,* 886 F. Supp. 1268, 1284-85 (D.S.C. 1995) (dismissing proposed amended complaint where plaintiff waited two years to amend complaint and one year after government counsel requested that plaintiffs amend their complaint to reflect their "changing legal theories and allegations.").

Here, Plaintiffs have moved for leave to amend three months after the filing of the initial Complaint and they seek to add additional factual allegations in support of one count in the Complaint. *See* ECF No. 19-2 (redline identifying proposed amendments to the Amended

9

Complaint). Defendants have not made a showing of bad faith, therefore, Plaintiffs' Motion for Leave to File Second Amended Complaint will not be denied on this basis.

Defendants also argue that Plaintiffs' proposed amendments as to Count IV are futile because they do nothing to change the fact that Plaintiffs did not spend more than 50% of their working time in the District of Columbia, as required under the District of Columbia Minimum Wage Revision Act. ECF No. 21 at 5; ECF No. 16-1 at 4–6. Here, Defendants are on firm ground.

In Count IV, Plaintiffs allege a violation of the DCMWRA. ECF No. 19-1 ¶¶ 50–57. The DCMWRA only protects individuals "employed in the District of Columbia," which occurs when:

> (1) The person regularly spends more than 50% of their working time in the District of Columbia; or
>
> (2) The person's employment is based in the District of Columbia and the person regularly spends a substantial amount of their working time in the District of Columbia and not more than 50% of their working time in any particular state.

D.C. Code § 32–1003(b).

Although there is a dearth of case law interpreting the DCMWRA, it "has, since its enactment, been confined explicitly to individuals working principally within the District." *Lincoln-Odumu v. Med. Fac. Assocs., Inc.*, No. CV 15-1306 (BAH), 2016 WL 6427645, at *7 (D.D.C. July 8, 2016). And this provision of the DCMWRA "limiting its reach to employees working primarily in the District appears among that statute's substantive requirements." *Lincoln-Odumu*, 2016 WL 6427645, at *8. Plaintiffs, however, argue that the DCMWRA's plain language "does not require an employee to spend at least 50% of their overall time working in the District Columbia to be covered." ECF No. 22 at 4. The Court disagrees.

The Fourth Circuit has instructed that, "[i]n interpreting a state law, we apply the statutory construction rules applied by the state's highest court." *In re DNA Ex Post Facto Issues*, 561 F.3d 294, 300 (4th Cir. 2009) And to assess competing statutory interpretations, "the Court must consider first whether the 'language at issue has a plain and unambiguous meaning with regard to the particular dispute in [this] case.'" *Lincoln-Odumu*, 2016 WL 6427645, at *6 (quoting *United States v. Villanueva–Sotelo*, 515 F.3d 1234, 1237 (D.C. Cir. 2008)). "If such an unambiguous meaning is apparent, the court's inquiry ends and [the court must] apply the statute's plain language." *Id.* (internal citations and quotations omitted). "In determining the 'plainness or ambiguity of statutory language' we refer to 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *United States v. Cordova*, 806 F.3d 1085, 1099 (D.C. Cir. 2015) (quoting *United States v. Wilson*, 290 F.3d 347, 353 (D.C. Cir. 2002)). But where "the statutory language is ambiguous, [the court must] look beyond the text for other indicia of [legislative] intent." *Villanueva–Sotelo*, 515 F.3d at 1237 (citing *Staples v. United States*, 511 U.S. 600, 605 (1994) (alteration in original)).

Although the Court did not identify any case law analyzing this statutory language in depth, the statutory text is clear: a person is employed in the District of Columbia where he or she "regularly spends more than 50% of their working time in the District of Columbia." D.C. Code § 32–1003(b). Put differently, the statute applies to individuals who spend most of their working time in the District of Columbia. Plaintiffs' interpretation—specifically that "§ 32-1003(b)(1) requires the Court, in determining whether an employee is covered under the DCMWRA, to first identify a unit of time, most logically a work week, in which the employee

11

spends more than half of this time in D.C. and then determine if such weeks are occurring 'regularly,'" ECF No. 18 at 3–4—is unconvincing.

Aside from the fact that Plaintiffs' proposition lacks any citation to authority, *see id.*, the "plain language of the DCMWRA" cannot support this interpretation because it seeks to add language where it does not exist in the statute. This is antithetical to the rules of statutory construction. *See Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) ("The primary and general rule of statutory construction is that the intent of the lawmaker is to be found *in the language that he has used.*") (quoting *Varela v. Hi-Lo Powered Stirrups, Inc.*, 424 A.2d 61, 64 (D.C.1980) (en banc)) (emphasis added). The statute does not mention identifying a "unit of time" such as a "work week," where the employee spends more than 50% of his or her time in the District of Columbia, nor does the plain language of the statute "bestow[] coverage" on an employee "in any week when he spends more than 50% of his working time in the District of Columbia," as Plaintiffs now argue. *See* ECF No. 18 at 4. To be sure, "working time," as defined in the statute, means "*all* the time the employee (A) [i]s required to be on the employer's premises, on duty, or at a prescribed place; (B) [i]s permitted to work; (C) [i]s required to travel in connection with the business of the employer; or (D) [w]aits on the employer's premises for work." D.C. Code § 32-1002(10) (emphasis added).

Because the unambiguous statute's meaning is apparent . . . "the court's inquiry ends" here, *see Lincoln-Odumu*, 2016 WL 6427645, at *6, and it will apply the statute's plain language to Plaintiff's proposed amendments. Here, Plaintiffs' proposed amendments with respect to Count IV, in which they seek to add factual allegations regarding "weeks in which more than 50% of their time was spent working in the District of Columbia," *see* ECF No. 19-1 ¶¶ 21–22, rest on their erroneous interpretation of Section 32-1003(b)(1). With these proposed allegations, Plaintiffs still do not allege that they regularly spent "more than 50% of their working time in the

District of Columbia." Accordingly, Plaintiffs' proposed amendments fail to allege that Plaintiffs are "employed" in the District of Columbia under Section 32-1003(b)(1), and they are futile.

Moreover, Plaintiffs' argument that this interpretation "would be unduly restrictive and at odds with the requirement that the DCMWRA be construed broadly to effectuate its remedial purpose," is, likewise, unavailing because it fails to account for the fact that the DCMWRA is more narrowly tailored than other D.C. wage laws. *See Lincoln-Odumu*, 2016 WL 6427645, at *7 (explaining that "the remedies afforded under the MWRA are generally 'far more restrictive' than those set out in the earlier-enacted [District of Columbia Wage Payment and Collection Law]" and that "the MWRA has, since its enactment, been confined explicitly to individuals working principally within the District.[,]" though no similar limitation appears in the DCWPCL).

Because Plaintiffs' proposed amendments are futile, they fail, as a matter of law, to state a claim upon which relief can be granted. *See Devil's Advoc., LLC.,* 666 F. App'x at 267. Therefore, the Court denies Plaintiffs' Motion for Leave to File Second Amended Complaint. Plaintiff's Amended Complaint also advances the, now-rejected, argument regarding "work weeks," *see* ECF No. 14 ¶ 21, therefore Defendants' Motion to Dismiss[3] Count IV is granted.

---

[3] The Court also notes that, in the Affidavit of Cosme Romeo Soto Valdez, ECF No. 18-1, attached to Plaintiffs' Opposition to Defendants' Motion to Dismiss, Plaintiff Valdez attests that "we did not spend more than half of our total work time in the District of Columbia." *Id.* ¶ 9.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to File Second Amended Complaint, is denied, and Defendants' Motion to Dismiss, for Summary Judgment, and/or for Judgment on the Pleadings as to Count IV, is granted. A separate Order shall issue.

Date: September 19, 2022                                         ___/s/_____
                                                                 GEORGE J. HAZEL
                                                                 United States District Judge